IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**RANDALL ALAN HORNER,**

    **Plaintiff,**

v.                                                 Civil Action No. 2:17-cv-02444

**NANCY A. BERRYHILL,**
**ACTING COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Motion for Judgment on the Pleadings[1] (ECF No. 15) and Defendant's Brief in Support of Defendant's Decision (ECF No. 16). This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for disability insurance benefits (DIB) under Title II of the Social Security Act.

### Background

Claimant, Randall Alan Horner, filed an application for DIB on October 22, 2013. Claimant alleged disability beginning November 25, 2008. The claim was denied initially on January 28, 2014, and upon reconsideration on April 9, 2014. Claimant filed a request for hearing on June 6, 2014. A video hearing was held on December 7, 2015. Claimant appeared in Parkersburg, West Virginia, and the Administrative Law Judge (ALJ) presided over the hearing

---

[1] Plaintiff's Brief in Support of Motion for Judgment on the Pleadings was first filed on August 24, 2017 (ECF No. 14). On September 1, 2017, Plaintiff filed a second Plaintiff's Brief in Support of Motion for Judgment on the Pleadings (ECF No. 15). Neither party has provided any explanation or objection to Plaintiff's filing on September 1, 2017. The present Proposed Findings of Fact and Recommendation will consider and discuss ECF No. 15.

from Charleston, West Virginia. The ALJ denied Claimant's application on February 2, 2016 (Tr. at 26). On March 30, 2016, Claimant requested the Appeals Council review the ALJ's decision (Tr. at 15). The Appeals Council denied Claimant's request for review on February 21, 2017 (Tr. at 1-7). Subsequently, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

## Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520 and 416.920 (2017). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a) and 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b) and 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* §§ 404.1520(c) and 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* §§ 404.1520(d) and 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(e) and 416.920(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-869 (4th Cir.

1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f) and 416.920(f) (2017).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2)    We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See

3

> 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be

documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity during the period of time from his alleged onset date of November 25, 2008, through his date last insured (DLI) of December 31, 2013 (Tr. at 22). Under the second inquiry, the ALJ found that Claimant suffers from the medically determinable impairments of anxiety state, depression not otherwise specified, residuals of a left knee injury and back impairment including spondylosis with myelopathy. (*Id.*) However, the ALJ found that Claimant does not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, Claimant did not have a severe impairment or combination of impairments. (*Id.*) Therefore, the sequential evaluation stopped at step two and the ALJ concluded that Claimant was not under a disability at any time from November 25, 2008, the alleged onset date, through December 31, 2013, the date last insured (Tr. at 26).

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

5

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Cellebreze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

## Claimant's Background

Claimant was born on September 10, 1954. He lives in Wood County, West Virginia, with his wife. Claimant possesses a driver's license. Claimant obtained his graduate equivalent diploma in the military (Tr. at 303). He spent two years in the Army and received an honorable discharge. (*Id.*) He was previously employed as a production worker with Sheet Metal Workers International Association (Tr. at 213).

## The Medical Record

### Philip E. Comer, Ph.D.

On January 28, 2014, State agency psychologist, Philip E. Comer, evaluated Claimant's application for DIB (Tr. at 51-60). Dr. Comer reviewed the following evidence of record: Tebay Psychological Services' report; Claimant's work history and functional report; Michael Shramowiat, M.D.'s medical evidence of record; and Mid-Ohio Valley Medical Group, Inc.'s

6

medical evidence of record (Tr. at 52-53). Dr. Comer diagnosed Claimant with the following severe impairments: sprains and strains-all types; spine disorders; and affective disorders (Tr. at 54). Dr. Comer found Claimant's affective disorder to mildly affect his activities of daily living and moderately affect his ability to maintain concentration, persistence, pace and social functioning. Dr. Comer found that Claimant experienced "one or two" repeated episodes of decompensation, each of extended duration. (*Id.*)

Dr. Comer's Mental Residual Functional Capacity (MRFC) assessment found that Claimant's concentration and persistence were moderately limited in the abilities to carry out detailed instructions and maintain attention and concentration for extended periods (Tr. at 56). Claimant's ability to perform activities within a schedule, maintained regular attendance and be punctual within customary tolerances was moderately limited (Tr. at 56-57). Additionally, Claimant's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods was moderately limited (Tr. at 57).

Dr. Comer's MRFC assessment also found that Claimant's individual social interaction was moderately limited in his ability to interact appropriately with the general public. (*Id.*) Claimant's adaptation limitations were moderately limited in his ability to respond appropriately to changes in the work setting. Dr. Comer's explanation for his opinions stated:

> Claimant's statements are reasonably consistent with CE and treatment records and are credible. However, he appears to have mental/emotional capacity for work like activity commensurate with his educational level in a work environment that has minimal social interaction requirements and that does not require sustained concentration and that can accommodate his physical limitations (Tr. at 58).

Joseph Richard, Ed.D.

On April 7, 2014, State agency psychologist, Joseph Richard, Ed.D., reviewed Claimant's application and the same evidence of record considered by Dr. Comer (Tr. at 62-63). Dr. Richard confirmed the findings made by Dr. Comer (Tr. at 61-70).

Brenda Tebay, M.A.

On January 17, 2014, State Agency Psychologist, Brenda Tebay, M.A., interviewed Claimant and conducted a Mental Status Examination (MSE) at the State's request (Tr. at 302-307). Claimant's chief complaints included his allegations of back injury, knee injury and depression (Tr. at 302). Ms. Tebay only had "the application packet" to review (Tr. at 303). The MSE reflected that Claimant drove himself to the consultative interview. His psychomotor behavior was fidgety. (*Id.*) Claimant complained of being in pain. He was cooperative and his speech was clear and coherent. He was "oriented x4," his affect was flat and his mood was depressed. (*Id.*) Claimant denied any thoughts of suicide or homicide (Tr. at 303-304). Claimant's thought processes were without impairment, hallucinations or illusions. There was no indication or report of delusion or obsessive-compulsive behavior (Tr. at 304). Claimant's judgment, concentration, remote memory and immediate memory were within normal limits. Claimant's recent memory was moderately deficient. (*Id.*) Claimant's social functioning was mildly deficient, "as Mr. Horner was fidgety, had a hard time staying seated, complaining that he was no[t] comfortable because he was in pain." (*Id.*)

Ms. Tebay's diagnostic impressions of Claimant included mood disorder due to general medical condition and sciatica of the lower back area. Ms. Tebay noted that Claimant stated that he worries about everything including his finances and losing his home (Tr. at 305). Claimant

reported that he feels sad, hopeless, helpless and worthless. (*Id.*) Claimant stated that his "mood is impart due to the medical condition of his lower back, as he is not able to work" (Tr. at 304).

<u>Medical Expert Judith Brendemuehl, M.D.</u>

Judith Brendemuehl, M.D., testified at the hearing that none of Claimant's impairments met or equaled the Listings (Tr. at 35). Dr. Brendemuehl recapped the evidence that showed that Claimant suffered a work related accident on April 18, 2007, with an MRI showing a complex tear of the left posterior horn and medial meniscus, and a surgery on the left knee on October 31, 2007. She testified that the operative record showed that the meniscal tear was repaired and there was no chondromalacia (Tr. at 35-36).

Dr. Brendemuehl stated that the records showed that Claimant was to be off work for two weeks, restricted to sedentary work for two weeks, and then could return to work with restriction after that period (Tr. at 36). She stated that there was a big gap in the record after that and that his later medical records talk about hypolidemia and medical management, but not his knees. (*Id.*) The doctor stated that a note from an examination of January 15, 2008, shows that Claimant had no crepitus, no instability, no tenderness and no effusion (Tr. at 37).

On cross examination Dr. Brendemuehl testified that the operative report's mention of a loose body in the medial knee compartment would not develop into arthritis later. (*Id.*). She stated that the records at the time did not show any evidence of arthritic change. She stated that the small radial tear centrally that was noted in the MRI was part of the complex tear of the medial meniscus and that the posterior horn is part of that as well. Dr. Brendemuehl stated that she did not believe there were any restrictions necessary based on lumbar tenderness, spasticity, and tightness contained in treatment notes (Tr. at 37-38).

Medical Expert Mary Ann Buban, Psy.D.

Dr. Buban testified that prior to Claimant's date last insured of December 31, 2013, there was evidence of his primary physician, Jason A. Barton, DO, with Mid-Ohio Valley Medical Group Inc., treating him for anxiety state and depression not otherwise specified (Tr. at 39). She stated that the treatment note indicate that Claimant's memory, attention, and concentration were all within normal limits.

Dr. Buban testified that the consultative examination report from Ms. Tebay, dated one month after Claimant's date last insured, showed a diagnosis of mood disorder due to medical condition, that stated concentration was within normal limits, recent memory was moderately impaired, and social functioning was mildly impaired. (*Id.*) She noted that the State agency psychologist had assessed Claimant's affective disorder as severe and found that he had a moderate limitation for detailed work, attention, concentration, and minimum social functioning. (*Id.*) Dr. Buban testified that Claimant's social functioning was only mildly limited according to Ms. Tebay's report and that "what I have would not support those moderate limitations [in the State agency's opinion]" (Tr. at 40). She stated that "Everything in the record that I've reviewed is non-severe."

Claimant's Testimony

Claimant testified that after he injured his left knee at work in 2007 he had surgery on the knee in October of that year. (*Id.*) He stated that he tried to return to work after the surgery, in a light duty position which involved sitting and doing computer work (Tr. at 40-41). He testified that after that he was returned to his regular job but with someone helping him because he had a limitation on weight lifting (Tr. at 41). He stated that his helper was taken away from him after fifteen minutes so he had to do the lifting regardless of the amount. He

stated that he had to walk, lift, step up on a table to get supplies off the cutting table. He stated that he did the job, but it hurt him; he stated that his knee swelled and was painful and he had trouble walking and he was moving a lot slower. Claimant stated that he had to take extra breaks because he was unable to stand on his feet as much as previously (Tr. at 42). He stated that lifting of even twenty-five pounds bothered him. He acknowledged that he ultimately stopped working due to not being able to do the job physically. He stated that he also was all "hypered up" because he was working ten hours a day, fifty-eight hours a week on the night shift and he could not sleep; he said he went to work having not slept for two to three days (*Id.*)

Claimant testified that Dr. Barton at Mid-Ohio Valley was treating him for insomnia and he took Xanax and Ambien (Tr. at 43). He stated that he was also treating for knee and back pain with Dr. Barton and the doctor's treatment consisted of prescribing pain medication that Claimant's prior doctor had prescribed – Soma and Vicodin. Claimant testified that state law prohibited him from working while taking the pain medication. He stated that at the time of the hearing he was only taking a muscle relaxer (Tr. at 44). Claimant testified that after he stopped working he felt horrible and he just sat around and didn't want to do anything; he stated that when he lay down he couldn't sleep. He stated that was how he had felt ever since he left work. (*Id.*)

Claimant's Challenges to the Commissioner's Decision

Claimant argues that the ALJ erred in denying his claim at step two of the sequential evaluation process in that she did not properly weigh the medical evidence/opinions of record and in failing to evaluate Claimant's credibility as required by regulations and rulings (ECF No. 15). Claimant asserts that the ALJ's credibility rationale was based purely on the ALJ's assessment of

the objective evidence of record, rendering her step two determination incomplete and erroneous. (*Id.*) In response, Defendant asserts that "substantial evidence exists where, as here, Plaintiff's own treating doctors do not believe he is functionally limited, and those opinions are supported by other medical opinions of record" (ECF No. 16).

<u>Weight Afforded Medical Opinions</u>

In the decision, the ALJ allotted various weight to medical opinions in the record. The ALJ gave "great weight" to the testimony and opinions of Dr. Brendemuehl and Dr. Buban. The ALJ gave "little weight" to "the State agency consultants' mental health opinions in Exhibits 1A and 3A based on Dr. Buban's testimony and the record as a whole" (Tr. at 25).

In support of this determination, the ALJ stated:

> As explained by Dr. Buban, the record does not support a finding of any moderate mental health limitations prior to the date last insured. In August 2013, the claimant's memory, concentration and attention were all within normal limits. Consultative examiner Brenda Tebay also found that the claimant's judgement, concentration, immediate memory and remote memory were all within normal limits and his social functioning was only mildly deficient (Exhibit 2F, p. 3)" (Tr. at 25).

<u>Discussion</u>

Social Security Ruling 96-6p provides that findings of fact made by state agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the ALJ and Appeals Council levels of administrative review. ALJs and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.

As explained by SSR 96-6p, the regulations provide "progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become

weaker." For example, SSR 96-6p states that opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.

Thus, SSR 96-6p concludes that the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as (1) the supportability of the opinion in light of the evidence in the record; (2) consistency with the record, including other medical opinions; (3) and any explanation for the opinion. *Id*.

Social Security Ruling 96-7p confirms that ALJs and the Appeals Council are required to consider findings of fact by state agency medical and psychological consultants and other program physicians and psychologists about the existence and severity of an individual's impairment(s), including the existence and severity of any symptoms. *See* 65 Fed. Reg. 11,866 (Mar. 7, 2000). While ALJs and the Appeals Council are not bound by any state agency findings, they may not ignore these opinions and must explain the weight they give to the opinions in their decisions. *Id.*

Further, "[u]nless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, non-treating sources, and other non-examining sources who do not work for us." (*Id.*) Examples of the kinds of factors that an administrative law judge must consider when evaluating the findings of State agency medical and psychological consultants are provided in paragraph (c)[2] of §§ 404.1527 and 416.927.

---

[2] Unless a treating source's opinion is given controlling weight, all of the following factors will be considered in deciding the weight given to any medical opinion: (1) Examining relationship; (2) Treatment relationship; (3)

Claimant's treating sources, Michael Shramowiat, M.D., and George E. Herriott, M.D., both opined that Claimant could work without any restrictions (Tr. at 432, 441). On February 26, 2008, Dr. Herriott stated that Claimant was "Currently back at work 4 10 hr shifts" (Tr. at 441). Dr. Herriott's plan for Claimant stated that it was "OK to return to full duties effective tomorrow on a trial basis." (*Id.*) On February 28, 2008, Dr. Shramowiat reported that Claimant could return to work with no limitations on March 3, 2008 (Tr. at 432). Claimant's treating physician, Dr. Barton, did not place any restrictions on Claimant's physical or mental functioning. Additionally, Dr. Brendemuehl and Dr. Buban testified at the hearing that Claimant had no severe impairments (Tr. at 35-40).

According to the Fourth Circuit, "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984). In other words, "[a] claimant has a severe impairment if an impairment or combination of impairments significantly limits his physical or mental ability to perform basic work activities." *Monroe v. Colvin*, 826 F.3d 176, 184 n.8 (4th Cir. 2016). In the present case, Claimant's treating physician's findings of no work restrictions are reinforced by the medical expert testimony and evidence of record, therefore, the ALJ's finding of no severe impairment is supported by substantial evidence.

The Fourth Circuit has held that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013).

---

Supportability; (4) Consistency; (5) Specialization; and (6) Other factors. 20 C.F.R. 416.927(c) and 404.1527.

The Claimant argues that the ALJ failed to perform a proper analysis of Claimant's subjective symptoms of pain and mental limitations (ECF No. 15). In making a credibility determination, the ALJ must follow a two-step analysis. "First, there must be objective medical evidence showing the existence of a medical impairment." *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). Second, the ALJ must consider "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." *Id.* at 595.

The ALJ here followed this two-step analysis. At step one, the ALJ determined that "the claimant's medically determinable impairments could have been reasonably expected to produce the alleged symptoms" (Tr. at 23). Thus, the ALJ proceeded to step two and determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. . . ." (*Id.*)

Claimant argues that the ALJ's step-two analysis was flawed for two reasons. First, the Claimant argues that the ALJ failed to comply with Social Security Ruling (SSR) 97-6p. SSR 97-6p provides that:

> [T]he adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:
> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Claimant argues that the ALJ here failed to consider those factors. The undersigned is unpersuaded by Claimant's argument because "[t]here is no requirement that [the ALJ] state specific findings as to each factor" as the Claimant suggests. *Wolfe v. Colvin*, No. 3:14-CV-4, 2015 WL 401013, at *4 (N.D.W. Va. Jan. 28, 2015).

Additionally, Claimant argues that the ALJ in the present matter, much like the ALJ in *Monroe v. Colvin*, failed to indicate how any of the facts he cited showed that the claimant did not have the nonexertional symptoms he alleged (ECF No. 15). In *Monroe*, the court explained that, "the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* The ALJ in *Monroe* discussed the Claimant's extensive medical history regarding sleep issues including sleep apnea and narcolepsy, however, the ALJ did not "indicate how any of the facts he cited show that Monroe did not lose consciousness two or three times daily or suffer extreme fatigue." *Id.* Thus, the ALJ failed to "build an accurate and logical bridge from the evidence in his conclusion that Monroe's testimony was not credible." *Id.* at 189 (citations omitted).

In the present case, the ALJ stated that she did not find Claimant as limited as he alleged and explained why she came to that conclusion (Tr. at 23). The ALJ noted, in part, the following: Claimant's own doctors—who heard Claimant's subjective complaints and prescribed his treatment—opined that he could work without restriction; An independent medical examiner—who documented Claimant's subjective complaints found Claimant's abnormalities to be less than mild (Tr. at 386); Claimant reported experiencing low back pain, but his examination findings showed normal leg strength, intact sensation, and negative straight leg raise testing; Claimant reported that he watched television, read, walked around the yard, performed his own

16

personal care, made simple meals, drove, shopped, mowed with a riding lawnmower, and performed simple household repairs; and Claimant worked 50 hours a week—unrestricted—until he was laid off. (Tr. at 24-25).

Although Claimant asserts that the ALJ placed too much weight on his ability to work more than 50 hours a week without restriction until his employer laid him off, the ALJ's consideration of this factor is appropriate. As previously discussed, Claimant's own treating sources opined that he could work without restriction. Furthermore, the medical records do not show a deterioration in Claimant's medical condition that would explain his now claimed inability to work without restrictions. As such, the ALJ reasonably drew a logical bridge that— absent some deterioration—Claimant's ability to work more than 50 hours a week indicated that he could work and that he would have continued to do so had he not been laid off. Therefore, the ALJ credibility determination at the step-two analysis is supported by substantial evidence.

## Conclusion

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** Plaintiff's Brief in Support of Motion for Judgment on the Pleadings (ECF No. 15), **GRANT** the Defendant's Brief in Support of the Defendant's Decision (ECF No. 16), **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court

specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Berger and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter: July 27, 2018

                                            Dwane L. Tinsley
                                            United States Magistrate Judge